case number 20-7204 Stanley Webb appellant versus United States Veterans Initiative U.S. Vets and Community Partnership. Ms. Fierro appointed Amicus Curia for the appellant, Ms. Steele for the appellees. Thank you, your honors. May it please the court. Good morning. Good morning. Good morning. My name is Thomas Birch from the University of Georgia appointed by the court as Amicus in support of Mr. Stanley Webb. Thank you for having us today. Today one of my third year students, Molly Fierro, will be arguing on our behalf and I'll be standing by. Thank you very much, your honors. Thank you. Thank you, your honors and may it please the court. My name is Molly Fierro and I will be of Mr. Stanley Webb, the appellant in this matter. Mr. Webb is a disabled military veteran who subways departments through U.S. Vets housing programs. The district court dismissed his Fair Housing Act sex discrimination claim under Rule 12b-1, finding that because he did not pay rent, he was not the last standing over his claim. In the alternative, it dismissed under Rule 12b-6, finding that he failed to allege an injury because he did not pay rent. This court should reverse that decision because the district court misread the Fair Housing Act, applied the wrong rule of civil procedure, and applied that rule the wrong way. First, it had jurisdiction over Mr. Webb's claim like all other claims arising under federal law, under federal question jurisdiction, and the Fair Housing Act only required him to be an 3604A, B, and D, allow any person to sue. And that term, a grieved person, merely requires someone to show that they experienced discrimination in related to housing. It's not a jurisdictional question because the Fair Housing Act, as held by the Supreme Court in Bank of America versus City of Miami, doesn't create a jurisdictional limit, but rather goes as far as Article 3 would allow. Ms. Fiora, what about the district court and the government's, not the government, the appellee's argument that you're not aggrieved unless you paid rent? So that's not the rule. What's your response to that? Our response is first, that the Supreme Court's decision in City of Miami wasn't the case of a in other cases like Havens Realty, which was the Supreme Court case about testers who had no intention of ever renting, but were merely showing up to see whether or not there would be discrimination when they asked about housing conditions, that those people didn't pay rent either. And that's supported by the clear language in the statute that says any person. Now there is another part of the Yeah. Let's start with the statute rather than the cases. So I agree with you about the statute, but maybe for a different reason. It says it's unlawful. Tell me why this, if this is wrong. It says it's unlawful to refuse a sell or rent after the making of a bona fide contract or otherwise make unavailable or otherwise make unavailable or deny a dwelling because of sex. And isn't that what happened here? Didn't, didn't, didn't the appellee make an apartment unavailable on the basis of sex, according to the allegation? Yes, he was. Why isn't that why the statute's clear? It's not that it's any person. It's that the statute says otherwise or otherwise make unavailable or deny. Is that right or not? Well, that does seem clear to me as well, your honor. But what I would add is that there has been some discussion about this other provision in the statute F1 that adds the term, any renter or buyer. So that seems to show that there was part of the statute where some housing claims did relate to you being a renter or buyer, so that's F1, but A, B and D, which is what he's doing under don't require that at all. So, and that's, if you're right, if you're right about that, we don't have to get into the 12B1 issue at all, right? It's just that we then go on to the 12B6 issue, right? Yeah, that's right. There's no reason here for this to have been dismissed on 12B1 and really 12B6 would have been the more plausible argument for the district court to dismiss under. That being said, at this stage, particularly given that he was a pro se pleading, the district court should have made every inference. With reference to the pro se pleading, nonetheless, are we going with both complaints? That may greatly affect whichever 12B we operate under, whether we're going under the amended complaint, which doesn't really seem to allege a discrimination claim, it just grabs somebody's room mate mostly, or are we going under both complaints? What's the status of this? You understand what I mean? I do, and it's true that there's a difference between these two documents he filed. When he filed his amended complaint, he attached a letter explaining why he was amending it, and he was concerned about things like addresses and adding additional facts. So Mr. Webb seemed to understand his amendment as a supplement to the original complaint rather than a replacement. But even if this court only wanted to look at just the amended complaint, he still references the Fair Housing Act and sex discrimination and specifically references the previous action before the Office of Human Rights, which was about this same set of facts. And in his response to the motion to dismiss, he also dealt with these Fair Housing Act sex discrimination claims head on. He answered the issue of whether this was really about his roommate and said that what he was concerned about was the preferential treatment of the program in allowing a female participant access despite being less qualified than he was. So it's not just that we look at – the question is not just whether we look at the both complaints or only the amended complaint. Even if we look only at the amended complaint, isn't the teaching of our decision in Brown v. Whole Foods that when we have a pro se plaintiff, we should look at all the documents? And here that would include – that would include the D.C. Office of Human Rights. So I think Brown does say, as you're suggesting, that a certain leniency is required, particularly on a 12b6, where the question is whether there's anything – any there there, and looking at all of the pleadings that he filed. But those additional documents from the Office of Human Rights were actually brought in as part of U.S. Vets' motion to dismiss. Now his complaint itself and his amended complaint did refer back to those previous disputes. So there wasn't the concern here that perhaps the defendant didn't know that he was concerned about sex discrimination or that the district court judge didn't know that that's what he was asking them to rule on. Because he has consistently alleged that he is concerned with sex discrimination in the way that he was treated. How would you state the standard of – for a pro se plaintiff, for a district court, what should the district court look to in a situation like this, and with what kind of a lens? What's the universe of material that they should look to? They should consider the filings on the question that's before the court, particularly a dispositive motion like a motion to dismiss. So that would include here his initial complaint, his amended complaint, and perhaps also his response to the motion to dismiss made by U.S. Vets, particularly because in the interest of justice and of getting the case right, it's important to look at what he was able to allege and what he did connect to this issue. If there are no further questions, Madam Presiding Judge, I'll reserve my remaining time for rebuttal. Thank you. Actually, my colleague, Sir Presiding Judge, is presiding. Judge Dadle. Good morning, Your Honors. May it please the court. My name is Laura Steele. I am here on behalf of a Fair Housing Act case. Well, could you just start with the language? I mean, that's because there's no rent paid. Is that your point? Well, Your Honor, Judge Dadle, I don't think that you necessarily have to reach that question because there was no... You argued that in your brief. We did, but... Well then, could you just focus on that argument and the language of the unavailable or denied? Right. And when Congress wants to use... When Congress wants to, he says, make it unavailable or denied, which is exactly what happened here, right? No. What happened here... Wait. Let me just see. He asked for a single occupancy apartment, and his allegation is that he didn't get it because they gave it to a woman, right? Four months after he was in an apartment, a shared occupancy apartment. Let's stick... Let's divide this up, okay? The one question is, do you need to be a renter? Do you need to pay rent? The second question that I hear you raising is, even if you don't, there's something about... Unavailable occupancy apartment occurred after he was in the building, right? Those are your two arguments. But I just don't see where you get that from the statute. The statute says that the statute clearly... This part of the statute, A, clearly is not limited to buyers or renters, like F, like sub F is. And the Fair Housing Act prohibits discrimination in the conditions of the building, right? So I just don't see where you get this argument. Well, Your Honor, the... This circuit has not decided the question. Ms. Steele, I'm looking at the statute. Tell me where you get your argument out of the statute. Well, the statute provides that there has to be a deprivation of housing, first and foremost. A deprivation of housing. There has to be a refusal to rent. There was no refusal to rent. His allegation is that he was denied a single occupant apartment because of his sex. No, not exactly. What he's saying is that four months after he received housing, that a female occupant was given her own... A female veteran was given her own unit. That's not in connection with his rental, even assuming that he was a renter, even assuming that he comes within the statute's parameters. Because number one, he was never deprived of housing. And number two, it was post-acquisition. But Ms. Steele, that... Could we possibly read the act that way? Just consider a hypothetical where you have a public housing project with too many people who want... Families that want multi-bedroom units. There just aren't enough in the project. So everybody coming in gets put in a too small unit, and they're all there, and they're all housed, but they're in a too small unit, and it's being given to them, subsidized, and they're not paying. So they're not renters. Then certain families leave, and there are available openings. Surely the Fair Housing Act would prohibit the requiring of earlier entrance into the program to wait because they're Black, and moving the White families into the more ample size apartments. I mean, that has to be classic discrimination under the act. And if that's prohibited, I guess the question is, based on the allegations generously read, why isn't that the same thing that's at issue here? It's that people who have housing, and what they want is to be transitioned to housing that's more desirable, and they're being steered based on a prohibited classification. Right. Well, this court has said that the Fair Housing Act affects accessibility of housing, not habitability. Could you talk about the statute for a moment? Take a look at section, just following up on Judge Pillard's question. Look at section sub B. Do you have sub B in front of you there? Yes, sir. Okay. It says it's got some language in it, and then it says you can't discriminate in provision of services, services, or facilities. That's what the statute says. Services or facilities. He's asking for a single occupancy apartment that he was denied because of gender. But that is not clearly articulated in his amended complaint. No. No. Because it's not clear what services he's talking about in his amended complaint. He wants a better apartment. If you take the two complaints together, as counsel suggested, is it not suggested at least clearly enough for us to discern from a pro se pleading? That four months after he has housing, he wants a better unit, or what he considers a better unit. Doesn't the pleading show that she also was an incumbent resident in housing at the same time? I think you have a point that you really haven't made, that he hasn't really shown that he was deprived because of sex, only that she was awarded because of sex, which is not too subtle a difference, I don't think. And it may mean that he doesn't survive 12B6, but just as far as the question of whether the allegations will get him there, having alleged the housing claim, if you take the two together, it's fairly clear, isn't it, that that's what this case is about from his, at least that's one thing this case is about from his pleadings. From his perspective. Yes. Yes. But that is not under the statute and under the case law interpreting the statute, that is not a deprivation. That all of his complaints are post acquisition, deal with acquisition. Let's go back to Judge Pillard's question on that. If the case were a race case in a multi-family housing situation, would the fact that they were applying for a vacancy move to another vacancy later on deprive them of an action under this act as opposed to applying from the beginning? Yes, I think because that in under Judge Pillard's scenario, that would deal with habitability, not accessibility. The fact that you are in a unit, now it's different with a disability. No, no, no, no. The hypothetical is, at least I think it is, is they have decided to allow only white people to have single occupancy apartments. In other words, all the black people are in the building, but they can't have single occupancy apartments, but white people can. Is that legal? No. But that's not what happened here. He's in a multi-occupant apartment. He wants to be in a single one. And he says he was, the only difference between Judge Pillard's hypothetical and this case is it's race. Her hypothetical is race. This is gender. What's the difference? Well, because U.S. vets did not place her, U.S. vets had only two people in single occupancy units. You're getting into the facts. We're talking about his allegation. This is 12 v. 6. The question is, is his allegation sufficient to survive? I think not. Because the decision to place her in a single occupancy unit occurs four months after he's already in housing. So it doesn't result in a deprivation to him. Well, then I go back to the hypothetical. It does. It results in- Black people, the African Americans are all in the building, in units. But they're denied single occupancy apartments. Better or desirable, whatever the characteristic is. They're not being denied housing because they've got apartments. That's right. I think that's why it affects habitability as opposed to availability, which is what this court has said the Fair Housing Act governs and protects. So your view is that the access to a better type or category of housing is just not covered. So a family that's squeezed into one bedroom and wants access to a three-bedroom because it has many children and is denied in comparison to similarly situated existing occupants is denied based on a prohibited classification. In your view, that is a habitability claim. It's not covered. It's not a denial of access to the better unit, to the bigger, more appropriate unit. That's correct. And this is not a situation- That's a purely legal question and that's your purely legal position. Yes, that's right. I had a follow-up question. We sort of skipped over a little bit the Article 3 standing at the beginning and questioning this here and talked a little bit about cause of action under the Fair Housing Act. I took you to be arguing, maybe less so in this court, that there wasn't harm cognizable for purposes of Article 3. Have you abandoned that argument that there is constitutionally cognizable harm, there's just not statutorily recognized harm? Yes. I think that under the statute, the statute requires a deprivation of housing or a denial of housing. And in this case, Mr. Webb had continuous housing for the entire time he was in the program. So he has sustained no injury and has no cause of action under the Fair Housing Act. Right. But assuming that that's the way one would read the Fair Housing Act, backing up to the constitutional question, there would be concrete harm to a person who, for example, with a large family has to live in a one-bedroom based on race, while people of a different race were ushered into a large family apartment, that would be constitutionally cognizable as harm, concrete injury, in fact, even if not cognizable under the Act. And so to the extent he's saying, because of my sex, I was held back from going into the by the same token, constitutionally cognizable Article III harm. If he had a claim for emotional distress, for example, under a different statute or different theory. Right. But that's taking issue with the cause of action. But just as a matter of constitutional harm, it's not emotional harm he's arguing about, it's, I'm living with roommates, and everybody would acknowledge on a market, it's more valuable to be in a place that's your own. You lock the door, you don't have to deal with anybody. Maybe not. It's not even, it wouldn't have to be emotional harm. It could be just, you know, straight up monetizable harm. Not that emotional harm isn't, but it would be a material harm relating to the nature of the unit. Well, you could certainly make an argument that having interaction that you have with others. That's not, that's damages. That's not whether there's harm. That some people might not mind it doesn't keep it from being actionable, does it? No, in our position. That's a defense, perhaps on marriage or maybe just on damages. But as far as somebody else might have a different preference, doesn't keep this from being discrimination, does it? No, but under the Fair Housing Act, since you have to have a deprivation, and there isn't one here. That's okay. And that's, and that's, we argued under 12b-6 to Judge Catelli, and asked her to dismiss on that basis. I see that I'm running out of time. You're out of time. Yes. Anything else? Do you have anything else? No, Your Honor, but we would submit with respect to the other issues on our brief. Thank you. Miss Sierra, would you like a minute or two of rebuttal? Yes, thank you, Your Honors. Mr. Webb has pleaded enough to survive under a 12b-6. He alleged that was offered a one-bedroom apartment by U.S. vets after he was determined by the VA to qualify for one. But once he got there, he was told that it was not made available to him. And he later found out that a woman who was less qualified than he was, was given access to those kinds of privileges and conditions. And looking at the clear language of the statute, under 3604, those terms, conditions of privileges are all relevant. And under D, making it not available for rental is also something that gets past that initial pleading stage based on what he has alleged. Judge Pillard's hypothetical gets it exactly right. Just because someone is not paying rent, whether their housing is subsidized, and they are living, and even if they are paying rent, but they're living in some place, they're not literally denied housing, doesn't give carte blanche to discriminate against them on any of the protected categories under the statute. What do you cite in the statute for that proposition? For the proposition that despite, so one thing. What provision of the statute supports that? So I would say that subsection D, making dwellings not available for inspection, sale, or rental, as well as the terms, conditions, and privileges. So if... Terms, conditions, and they were steering certain people because of their characteristics away, that would still be a violation of the act and cognizable under the Fair Housing Act. And the term in the statute, the definition of to rent, isn't even about payment. It says to exchange for a consideration. So that requirement of making it attached to what you're paying for really isn't what his claim is about. It's about being denied access to an entirely different program that afforded additional privileges. Thank you. Thank you. Ms. Ferro, the court appointed Professor Birch to serve as amicus and we appreciate your help. You've done a fine job. Thank you. The case is submitted.
judges: Tatel, Pillard, Sentelle